UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICHARD ROGERS,**

        **Plaintiff,**                          Case No. 2:04-cv-594
                                                JUDGE GREGORY L. FROST
       **v.**                                                         Magistrate Judge Terence P. Kemp

**SOLID WASTE AUTHORITY
OF CENTRAL OHIO, ET AL.,**

        **Defendants.**

**OPINION AND ORDER**

This matter is before the Court for consideration of a motion for summary judgment (Doc. # 20) filed by Defendant, Solid Waste Authority of Central Ohio ("SWACO"), a memorandum in opposition (Doc. # 25) filed by Plaintiff, Richard Rogers, and a reply memorandum (Doc. # 35) filed by SWACO.  For the reasons that follow, the Court grants in part and denies in part the summary judgment motion.

**I.  Background**

Plaintiff, Richard Rogers, began his employment with SWACO on April 1, 1994, as a Fleet Supervisor.  Defendant, Solid Waste Authority of Central Ohio ("SWACO"), is a solid waste district that was created by the Ohio General Assembly with the mission of reducing reliance on landfills.

In 2002, at the age of 51, Rogers was promoted to Director of Operations.  This position was responsible for the pick up of Columbus-area mixed recyclable materials.  Rogers alleges that SWACO Special Projects Manager John Heiger was responsible for the Waste to Energy

1

Facility ("WTEF") building and grounds. SWACO alleges that Rogers was responsible for the general maintenance of the WTEF building and grounds. Both Rogers and Heiger reported to SWACO Assistant Executive Director Ronald J. Mills. Mills in turn reported to SWACO Executive Director Michael Long.

On August 1, 2002, Heiger told Rogers that he was going to store commingled materials in ash bunkers at the closed WTEF. Previously, SWACO had a contract with Smurfit, a recycling facility that took this waste for disposal. The commingled materials were hauled to the WTEF ash bunkers at least from November 2002 though July 2004. Rogers never instructed that the commingled materials be removed or informed Long that they were being stored there.

On July 18, 2003, SWACO Chief Counsel Harold Anderson, Mills, and Long discovered the commingled materials mixed with trash (approximately 25 tons). The dumping of the commingled materials allowed for the accumulation of standing water, creating undesirable conditions suitable for mosquito breeding. On July 25, 2003, Long held a meeting with SWACO employees to determine whether they knew about the unauthorized dumping. Rogers and several others, including seven other managerial employees, all indicated that they had knowledge of the dumping.

During an independent investigation, Heiger (late 50's), Jack Wackernagle (58 years old), Tina Redman (52 years old), and Rogers (52 years old) were put on paid administrative leave. SWACO Operations Manager Joe Huston[1] and Scott Gordon, both of whom were also known to have knowledge of the impermissible dumping, were not suspended; both men were

---

[1] Two spellings of this individual's last name appear in the record. Rogers states in his deposition that the name is "Houston." (Doc. # 20, Rogers Dep., at 41.)

under the age of 40. In Rogers' absence, Mills performed almost all the duties of the Operations Director.

After a December 12, 2003 disciplinary hearing, Long met with Rogers and gave him the option to resign, negotiate, or be terminated. Although Redman and Wackernagle negotiated, Rogers was not prepared to negotiate and was consequently terminated. Heiger resigned his employment with SWACO. There was no recommendation to terminate the under-40 Huston, Rick Dodge, or Gordon. Mills did, however, recommended to Long that the over-50 Heiger, Redman, and Wackernagle be terminated. After Rogers was terminated, the SWACO Board of Trustees abolished the Director of Operations position.

Upon Roger's termination on December 30, 2003, he had 71 hours of vacation credit for the 2003 calendar year. SWACO's policy provides that "[u]pon termination of employment, employees will be paid ... for unused vacation time that has been earned through the last day of work." (Doc. 25, SWACO Employee Handbook, at 3.) Rogers was not paid for the 71 hours. Rogers was paid, however, for banked vacation hours that he accrued as an hourly employee prior to the change in policy when Resolution 140-01 was passed.

SWACO structured their bonus payments in two parts: group bonus and an individual performance-based bonus. Rogers did receive the group bonus for 2002, but did not receive the performance-based individual bonus in the year of 2002 based on his participation in the unauthorized dumping. Rogers did not receive either type of bonus payment for the year of 2003.

On July 12, 2004, Rogers subsequently initiated this action by filing a complaint that asserted claims for age discrimination, violation of Ohio Rev. Code § 4112.02, and failure to pay

3

earned wages. (Doc. #1.) Following the dismissal of the Ohio Rev. Code § 4112.02 claim, only Roger's age discrimination and failure to pay earned wages claims remain. (Doc. #8.) SWACO has moved for summary judgment. (Doc. # 20.) The parties have briefed the issues involved, and that motion is now ripe for disposition.

## II. Discussion

**A. Standard of Review Involved**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B. Age Discrimination Claim

In order to survive summary judgment on his claim of age discrimination, Rogers first must present a *prima facie* case of such discrimination. To demonstrate all the elements of a *prima facie* case of age discrimination, he must show that (1) he was a member of the protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the particular position; and (4) he was replaced by a person who is not a member of the protected class or that similarly situated non-protected employees were treated more favorably. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000); *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998). Rogers has established a *prima facie* case of age discrimination.

There is no dispute over the first two elements of Roger's claim. At the time that Rogers was fired, he was 51 years old and thus a member of the protected class. 29 U.S.C. § 631(a); *Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir. 1986) (recognizing 51-year-old plaintiff as member of protected class). Additionally, his termination of course qualifies as an adverse employment action. *Timmons v. Boehringer Ingelheim Corp.*, 132 Fed. Appx. 598, 599 (6th Cir. 2005) (recognizing discharge as adverse employment action); *Schram v. Schwan's Sales Enterprises, Inc.*, 124 Fed. Appx. 380, 385 (6th Cir. 2005) (same).

SWACO disputes the third element of a *prima facie* case, whether Rogers was qualified

5

for his position. The company argues that Rogers was not qualified for this position on the grounds that he did not meet SWACO's job standards when he failed to report or stop the dumping of the commingled materials into the bunkers. However, "when assessing whether a plaintiff has met [his] employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." *Cline v. Catholic Docese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 1999). SWACO fails to assert any reason why Rogers was not qualified for the position *other* than the incident underlying this case. Further, a reasonable jury could conclude that Rogers was qualified for the position from the fact that Rogers was given a 10% performance-based raise in April of 2003. *See Jennings v. Hoechst-Roussel Pharmaceuticals, Inc.*, No. 3:96CV-783-S, 1998 WL 34078424, at *2 (W.D. Ky. July 17, 1998) (holding that a reasonable jury could conclude that a plaintiff was qualified for his position because he received an annual pay raise and was considered for another position).

This leaves the fourth and final element of Rogers' *prima facie* case. In Rogers' deposition, he states that he was replaced by the younger Huston, although Huston may have a different title than director of operations. (Doc. # 20, Rogers Dep., at 115.) Mills' affidavit in turn represents that Mills and Huston assumed Rogers' duties (Doc. # 20, Mills Aff., at 2-4 ¶¶ 7, 10), and Long's affidavit states that Rogers' position was abolished from the SWACO Table of Organization after Rogers was fired (Doc. #20, Long Aff., at 3 ¶ 11). Whether and to what extent Huston replaced Rogers is a genuine issue of material fact that should be left to the jury. The factual dispute is important, because a discharged employee can satisfy the fourth element by showing that a younger employee took over his duties even on only a temporary basis.

*Schaller v. Donelson Air Conditioning Co.*, No. 3:04–0545, 2005 WL 1868769, at *9 (M.D. Tenn. Aug. 4, 2005) (citing *Erwin v. Potter*, 79 Fed. Appx. 893, 901 (6th Cir. 2003)).

Alternatively, Rogers can meet the fourth element by pointing to similarly situated operations manager Huston and transfer station supervisor Gordon.  These individuals, both under 40, also had knowledge of the pile and also did not report it, but were not discharged.  Although Huston and Gordon are subordinates to Rogers, they are similarly situated in "all the relevant aspects." *Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555, 562 (6th Cir. 2004) (quoting *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000)).  The "relevant aspect" that makes Huston, Gordon, and Rogers similarly situated is established in SWACO's policies.  Long stated that *every* employee of SWACO with knowledge of the pile was charged with the duty to report it up through the management chain. (Doc. #27, Long Dep., at 63-66.)  Moreover, SWACO stated that the policy that Rogers failed to adhere to and was the purported reason for his termination applies *equally* to all employees.  (Doc. #25, Defendant's Responses to Plaintiff's First Set of Interrogatories, at 2.)

Both Huston and Gordon were charged with the same responsibility as Rogers to report the dumping, and if their immediate superior did not act in regard to the dumping, they were charged with pressing the issue up the managerial ladder–beyond Rogers, ultimately reporting to his supervisor.  Thus, this is the unusual case in which workers of different levels are similarly situated because the relevant characteristics involved–the same fundamental duties under the same policies that held them to the same standards–apply to all involved.  The fact that SWACO's decisionmakers may indeed have honestly believed in their investigation does not prove dispositive, then, because it is undisputed that Rogers had violated policy.  What is

7

important is whether, even in light of SWACO's honest beliefs, the company based its decisionmaking on age.

Both Wackernagle and Huston were under the supervision of Rogers, and both were aware of the bunkers. Only the over-50 Wackernagle was put on administrative leave, while the under-40 Huston remained employed. This demonstrates that a subordinate of Rogers, Wackernagle, was held to the same reporting standard as Rogers. It also evidences that a similarly situated employee, Huston, was treated more favorably. By demonstrating that similarly situated employees were treated more favorably, Rogers has established the fourth element of his *prima facie* case regardless of whether he was replaced by a younger employee.

After a plaintiff has established a *prima facie* case, the burden of production moves to the defendant to present a legitimate non-discriminatory reason why the plaintiff was fired. *See Hagan v. Warner/Elecktra/Atlantic Corp.*, 92 Fed. Appx. 264, 267 (6th Cir. 2004) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). After the defendant has met his burden of production, the plaintiff now has the burden to demonstrate that the reason offered by the defense was pretexual. *Id*. SWACO asserts that Rogers was fired because of his failure to report or fix the dumping of the commingled materials. This is a non-discriminatory reason for Rogers' termination.

In order to demonstrate that the reason offered by SWACO is pretexual, Rogers must demonstrate that (1) the proffered reasons had no basis in fact, (2) the proffered reason did not actually motivate the adverse employment decision, or (3) the proffered reason was insufficient to motivate the adverse employment action. *Koval v. Dow Jones & Co.,* 86 Fed. Appx. 61, 66 (6th Cir. 2004) (citing *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th

Cir.1994)).  He "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer*, 29 F.3d at 1083.  In this explanation the plaintiff offers evidence that "circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id* at 1084.

Rogers has presented evidence that both Huston and Gordon, who were not fired, were aware of the dumping and did not report it.  The defense points to the fact that Rogers was deemed an active participant, while the others were not.  However, a jury may reasonably reject the employer's explanation for Rogers' firing because *all* the employees were held to the *same* standard of reporting the dumping.  There is the requirement that "a plaintiff must introduce some evidence of age discrimination other than his prima facie case where there is no evidence which directly challenges the credibility of his employer's proffered explanations." *Id*. at 1085.  Although the evidence of Hudson and Gordon's retention was used in Rogers' *prima facie* case, this evidence does directly challenge the credibility of the SWACO's proffered explanation.  Rogers has presented evidence that the proffered reason did not actually motivate the adverse employment decision.

Rogers has established a *prima facie* case of age discrimination.  Further, Rogers has created a genuine issue of material fact as to whether SWACO's proffered reason for Rogers' termination was pretextual.  Therefore, the Court **DENIES** summary judgment in regard to Rogers' age discrimination claim.

### B. Wages Claims

#### 1. Vacation Pay

Resolution 140-01, passed on December 30, 2001, changed SWACO's vacation policy

by crediting 160 hours of vacation time to salaried employees at the beginning of the calendar year of 2003.  Rogers did not use 71 of these hours during 2003.  Section 5.2.6 of SWACO's handbook states that "[u]pon termination of employment, employees will be paid at the employee's rate of pay at the time for unused vacation time that has been earned through the last day of work." (Doc. 25, SWACO Employee Handbook, at 3.)   The parties dispute whether Rogers had accrued or earned the 71 hours during 2003.  SWACO argues that the hours were not earned, but simply credited to Rogers at the beginning of 2003.  Rogers argues that because 71 hours were unused, he should be compensated for these hours.

       The change created by Resolution 140-01 provided that salaried employees no longer earned or accrued vacation time on a periodic basis, but were credited the time at the beginning of the calendar year.  Nothing in the employee handbook defines when hours are accrued by salaried employees.   Therefore, a reasonable jury could conclude that the credited hours provided to salaried employees were earned at the beginning of the year.

       SWACO argues there is no contractual right to the vacation pay because the employee handbook is not an enforceable contract.  However, Ohio courts have held that an employee has "a right to his accrued vacation pay upon termination." *Braucher v. Allied Truck Parts Co.*, No.2002CA00278, 2003 WL 1735248, at *2 (Ohio App. 5th Dist. Mar. 31, 2003).  In *Braucher,* the employee handbook, like SWACO's handbook, contained a disclaimer that the handbook was not a contract.  *Id*.  Despite this disclaimer, the state court found the plaintiff to be entitled to his accrued vacation pay absent a formal announcement of a change in the handbook policy. *Id*.

       Here, there is no evidence that SWACO has made any formal changes to their handbook policies during the relevant time period.  There thus exists a genuine issue of material fact of

whether the vacation hours were earned, or accrued, at the beginning of the calendar year. A reasonable jury may therefore conclude that Rogers is entitled to his 71 hours of vacation pay, one day of vacation pay, or no vacation pay. *See Korsnak v. CRL, Inc.*, No. 84403, 2004 WL 2635582, at *3 (Ohio App. 8th Dist. Nov. 18, 2004); *Braucher*, 2003 WL 1735248. The Court accordingly **DENIES** summary judgment on Rogers' claim for unpaid vacation pay.

### *2. Bonus Pay*

There are two types of bonuses employees of SWACO may receive. The first is a merit bonus (performance-based bonus) and the second is a goal-sharing bonus (non-performance-based, or group, bonus). (Doc. 20, SWACO Employee Handbook, at 9.) The performance-based bonus is awarded by evaluating each individual employee. The group bonus is awarded after reviewing the entire staff's performance on established goals.

SWACO alleges that employees are eligible for the bonus payment only if they were employed for the entire calendar year. SWACO's argument is not supported with any reference to the handbook or to the 2002 Proposed Compensation Plan. Section 3 of the Proposed 2002 Compensation Plan provided that the bonus could be pro-rated for months of service completed. Curiously, it appears that the 2002 Compensation Plan was not formalized into a writing for 2002 or 2003, and various deponents are less than clear on the nature of the plan.

There is thus a notable genuine issue of material fact as to the enacted terms of the compensation plan. Additionally, there is nothing in the employee handbook limiting the bonuses to those employees employed for the entire calendar year. Ohio law provides that an employee may be equitably entitled to a post-employment year-end bonus if the employee had already completed his services for the bonus year prior to the conclusion of his employment. *See*

*McKelvey v. Spitzer Motor Center, Inc.*, 46 Ohio App.3d 76, 77-78, 545 N.E.2d 1311, 1314 (1988); *Montgomery Ward & Co. v. Smith*, 12 Ohio Law Abs. 28, 30 (5th Dist. Ct. App. 1931). In light of this precedent and the genuine issue of material fact as to whether Rogers is entitled to a pro-rated group bonus for 2003, the Court finds summary judgment unwarranted.

As for the individual performance-based portion of the bonus, SWACO's executive staff has the ability to review the performance of an employee and allocate the bonus accordingly. SWACO's employee handbook states that "[t]he Executive Director is authorized to award merit increases to employees based upon their annual Performance Appraisal." (Doc. #20, SWACO Employee Handbook, at 9). Further, the Proposed 2002 Compensation Plan, if adopted as written, provided that the personal evaluation will be conducted by a supervisor with executive review. Therefore, the executive staff had the power to allocate the bonus to Rogers based on his performance. At least one Ohio court has recognized that a merit bonus may be "awarded on a competitive basis, more like a gratuity than an entitlement." *Evely v. Carlon Co.*, No. 43175, 1982 WL 2327, at *1 (Ohio App. 8th Dist. Feb. 4, 1982). That state court went on to hold that the employer had the discretion to award such a bonus, and the employee was not entitled to his bonus because no binding bonus agreement was breached. *Id*. Rogers' argument that because he has established that the reason for his termination was pretextual, he is entitled to the performance-based portion of the bonus is without merit. There is no authority that the claim of age discrimination entitles him to the bonus. Termination for inappropriate reasons does not curtail an employer's discretion to award performance-based bonuses to which an employee has no entitlement. Because Rogers has presented no evidence of such an entitlement here, there is no genuine issue of material fact as to the performance-based portion of his bonus for 2002 and

2003.

There exists a genuine issue of material fact to whether Rogers must be employed for the entire year to receive the group bonus for 2003.  Rogers is not entitled to the merit or performance-based bonuses for 2002 and 2003 because it was a discretionary bonus.  Thus, the Court **DENIES** summary judgment on Rogers' claim for the group bonus for 2003, but **GRANTS** summary judgment for SWACO on Rogers' claim for the performance-based bonuses for 2002 and 2003.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** SWACO's motion for summary judgment in regard to Rogers' claims for age discrimination, for the goal-sharing (non-performance-based, or group) portion of his bonus pay, and for vacation pay, but **GRANTS** the motion in regard to Rogers' claim for merit (performance-based) bonus pay.

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE